IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO. 5:14-CR-95-BO

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | **O R D E R** |
| CALVIN WATSON, | ) | |
| Defendant. | ) | |

This matter is before the Court on defendant's motion to suppress [DE 19]. For the reasons stated herein, the motion to suppress is DENIED.

## BACKGROUND

On May 21, 2014, defendant was indicted by the Grand Jury with possessing crack cocaine in violation of 18 U.S.C. § 841(a)(1) and possessing a firearm in furtherance of a felony in violation of 18 U.S.C. § 924(c)(1)(A). On July 9, 2014, defendant filed the instant motion which the government opposes.

On August 6, 2013, the Raleigh Police Department Career Criminal Unit ("Raleigh PD") received a tip from a confidential source regarding Calvin Watson. The source informed officers that defendant was trafficking cocaine throughout the city of Raleigh, and was using a residence at 1014 Harp Street as a "stash house" to store his cocaine. Based on that tip, officers began a narcotics investigation of defendant. Raleigh PD first looked at defendant's criminal history and determined that he had a prior conviction for cocaine trafficking in Wake County in 2006. Officers also determined that the listed tenants for 1014 Harp Street were Tamika Malloy and Needham Holder, both of whom also had prior drug convictions.

Beginning on August 13, 2013, Raleigh PD began visual surveillance on defendant and his vehicle. On that date, officers observed defendant leave 1014 Harp Street and drive to 1421-A Sawyer Road, where he remained inside for only five minutes and then left. The officers were already familiar with this Sawyer Road location as a "high drug area" known for hand-to-hand drug transactions and a heavy gang presence. Defendant next drove to 709 Lunar Drive and went inside that residence, though once again he only remained for a few minutes and then left. Officers were also personally familiar with this location, having conducted multiple prior investigations at that house for drug and gang activity.

Raleigh PD continued its surveillance on defendant for the next two weeks and observed him repeating a pattern of behavior they knew to be consistent with dealing drugs out of a "stash house." On August 27, 2013, officers once again watched defendant leave 1421-A Sawyer Road and drive directly to 1014 Harp Street. Defendant went inside for two minutes and then came back out and got into his vehicle. At this point, officers decided to conduct an investigatory stop of defendant. When defendant saw officers approaching, his eyes got very wide and he became so nervous that he lost control of his vehicle, allowing it to roll into one of the officer's cars. Upon approaching defendant, the officers were able to immediately smell an odor of marijuana.

One of the Raleigh PD officers then initiated physical detention of defendant by first instructing him to keep his hands on the steering wheel and then attempting to escort him out of the vehicle. Defendant did not follow the officer's instructions and reached around behind himself with his right hand as he exited the car. Two additional officers then intervened to help secure defendant and officers conducted a frisk of defendant and his clothing, including his pockets and inside of his rear waistband, where they discovered 28.4 grams of crack, and 3 grams of marijuana, $605, and a cellphone.

2

Case 5:14-cr-00095-BO   Document 21   Filed 08/22/14   Page 2 of 5

Then fearing a person inside of 1014 Harp Street could destroy any evidence after witnessing the detention, officers made a brief protective sweep of the house to ensure it was unoccupied. Finding no other occupants, officers ceased looking through the house until defendant gave his consent for officers to search the house and indicated where contraband could be found. Defendant directed officers to a stolen .40 Ruger pistol, 133 grams of packaged cocaine, digital scales, and other drug paraphernalia. Officers also found cookware in the home with cocaine residue on it, commonly used to prepare crack from powder cocaine.

## DISCUSSION

In his motion to suppress, Mr. Watson seeks an order suppressing any and all evidence seized and statements obtained by law enforcement as a result of the search of Mr. Watson's person and Mr. Watson's home on August 27, 2013. "[T]he police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot'". *U.S. v. Sokolow*, 490 U.S. 1, 7 (1989) (quoting *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). The reasonable suspicion standard is less than probable cause, and simply requires that there be "specific and articulable facts which, taken together with rationale inference from those facts, reasonably warrant the intrusion." *Terry*, 392 U.S. at 21. This analysis is made by looking at the totality of the circumstances to determine whether the officers had reasonable suspicion. *U.S. v. Arvizu*, 534 U.S. 266 (2002). The Fourth Circuit has noted that:

> A host of factors can contribute to a basis for reasonable suspicion, including the context of the stop, the crime rate in the area, and the nervous or evasive behavior of the suspect. . . . And multiple factors may be taken together to create reasonable suspicion even where each factor, taken alone, would be insufficient. . . . Thus, we will not find reasonable suspicion lacking 'based merely on piecemeal refutation of each individual fact and inference.'

*U.S. v. George*, 732 F.3d 296, 299 (4th Cir. 2013) (internal citations omitted).

3

Here, viewed in the totality of the circumstances, the reasonable suspicion of officers was well-supported. The confidential informant's tip was confirmed by defendant's pattern of behavior observed by officers over two weeks. Officers knew of defendants' prior drug involvement. Officers smelled marijuana from outside of defendant's vehicle. Officers had direct personal experience dealing with frequent drug and gang activity at the exact locations defendant repeatedly visited. These facts, taken together, properly warranted further investigation. *See Sokolow*, 490 U.S. at 4.

Further, during the initial detention of defendant for a narcotics investigation, the officers were justified in performing a preliminary search of his person for weapons and other contraband. It is an "unfortunate reality that drugs and guns all too often go hand in hand." *U.S. v. Lomax*, 293 F.3d 701, 706 (4th Cir. 2002). In addition to that reality, here, officers saw defendant reaching behind his back with one arm as he was being escorted out of his vehicle. Such a movement easily could have been interpreted as a reach for a gun. *See George*, 732 F.3d at 299 ("a suspect's suspicious movements can also be taken to suggest that the suspect may have a weapon").

When consent is voluntarily given, the resultant search should be deemed reasonable and permissible. *Schneckcloth v. Bustamonte*, 412 U.S. 218, 219 (1973). Consent is evaluated by looking at the totality of the circumstances in the case. *Id.* at 229–30. Here, the consent to search the house was clearly given voluntarily. Although defendant claims that he was coerced because he was asked in private after an illegal detention and search of his person, this is clearly not the case. First, the Court has held the detention and search of his person to be lawful. Second, after a protective sweep of the house, officers took no action to search further and simply informed defendant that they intended to apply for a search warrant if he did not consent to a search.

Defendant then signed a consent form and pointed out the exact places where he had concealed the drugs and a firearm in order to avoid forcing the officers to search through every possible location in the house. Although clearly faced with a choice, and defendant clearly chose what he believed to be the best option, such a choice does not rise to the level of involuntary coercion.

As the detention and searches that occurred on August 27, 2013 were permissible, the exclusionary rule does not apply and defendant's motion to suppress must be denied.

## CONCLUSION

For the foregoing reasons, defendant's motion to suppress is DENIED.

SO ORDERED,

this _22_ day of August, 2014.

_Terrence W. Boyle_
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE